This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Castle Manufactured Homes, Inc. and Andrew and Sheryl De La Rosa (collectively, "Castle Homes"), appeal from the judgment of the Wayne County Court of Common Pleas, affirming a decision of the Congress Township Board of Zoning Appeals to deny a variance and granting summary judgment in favor of appellees.[1] We affirm.
 I.
Castle Homes operates a business that sells new and used manufactured homes and assists some buyers in obtaining property on which to locate the manufactured home sold. In September 1994, Castle Homes negotiated a lease of a two acre parcel of land at the intersection of Interstate 71 and State Route 539 (Congress Road) in Congress Township, Wayne County, Ohio. In November 1994, Castle Homes was incorporated, and a contractor was hired to prepare the parcel for Castle Homes' business; however, work was delayed until January 1995.
On November 8, 1994, the voters of Congress Township approved the adoption of a zoning resolution for the unincorporated areas of the township. The Congress Township Zoning Resolution ("the Zoning Resolution") became effective November 23, 1994. The Zoning Resolution provided for two zoning districts, agricultural and business/industrial, but the entire unincorporated area of the township was zoned agricultural.
On January 17, 1995, the Zoning Inspector notified Castle Homes that the construction work that was taking place on the leased parcel violated the Zoning Resolution and ordered the work to cease. Castle Homes appealed to the Zoning Board and applied for a variance under the Zoning Resolution. On February 13, 1995, the Zoning Board approved the requested variance ("the 1995 variance"), but with several conditions. One condition was that the variance was only for a three year period (the duration of Castle Homes' lease), after which the variance would expire and Castle Homes could reapply for a variance.
Over the next three years, a degree of friction developed between Castle Homes and township officials. Castle Homes chafed under some of the restrictions placed on its business by the variance and did not comply with all of them. Some township officials voiced the opinion that they did not approve of Castle Homes' business. The Zoning Inspector was a frequent visitor to Castle Homes and allegedly imposed even further restrictions on the business, above and beyond those already required by the variance.
In a letter dated November 7, 1997, the clerk of the Zoning Board notified Castle Homes that the variance was to expire on January 30, 1998, and that a new variance must be obtained to continue doing business at that location. Castle Homes submitted an application for this new variance ("the 1998 variance request") on November 17, 1998. A hearing was held before the Zoning Board on January 19, 1998. Sworn testimony was taken, and arguments were presented by Castle Homes. The Zoning Board rejected Castle Homes' argument that the conditions placed on the 1995 variance were invalid and therefore the variance did not terminate after three years. The Zoning Board then voted unanimously to deny the 1998 variance request.
On January 28, 1998, Castle Homes filed a combined notice of appeal and complaint in the Wayne County Court of Common Pleas. The notice of appeal was from the Zoning Board's decision denying the 1998 variance request. The complaint named appellees as defendants and sought declaratory judgments and injunctive relief on several issues relating to the 1995 variance and the 1998 variance request. Castle Homes also set forth a claim for damages against appellees. Appellees answered.
On August 14, 1998, Castle Homes moved for partial summary judgment, and appellees moved for summary judgment. Each side then responded to the other's motion. On November 18, 1998, the trial court issued its decision. On Castle Homes' administrative appeal, the trial court affirmed the Zoning Board. The trial court further granted summary judgment in favor of appellees on all claims in Castle Homes' complaint. Castle Homes now appeals to this court.
 II.
Castle Homes asserts two assignments of error:
First Assignment of Error
 The Trial Court Erred in overruling Appellants' Motion For Partial Summary Judgement [sic].
Second Assignment of Error
 The Trial Court erred in sustaining Defendants/Appellees [sic] Motion For Summary Judgement [sic] when genuine issues of material fact existed and the decision was based upon a mistake of law.
These assignments of error raise several issues, relating to both the administrative appeal and the trial court's decision granting summary judgment in favor of appellees on Castle Homes' complaint. We will address each of the various issues in turn.
 Standards of Review
We first note the respective standards of review of a trial court's resolution of an administrative appeal and the trial court's decision on a motion for summary judgment.
 1. Administrative appeals
Administrative appeals undertaken from a township board of zoning appeals are governed by R.C. Chapter 2506. See R.C.2506.01. The appeal is first addressed to the court of common pleas of that county. Id. The common pleas court's standard of review is set forth in R.C. 2506.04:
 The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from[.]
Our standard of review is even more limited; we must affirm the court of common pleas unless that court's decision "`is not supported by a preponderance of reliable, probative and substantial evidence.'" Smith v. Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608, 613, quoting Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34. In making this determination, we apply an abuse of discretion standard. Nauth v. Sharon Twp. Bd. of Zoning Appeals (Sept. 2, 1998), Medina App. No. 2754-M, unreported, at 4. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 2. Summary judgment
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
 Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, limiting Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 The 1995 Variance
We first address Castle Homes' various assertions regarding the 1995 variance. Castle Homes argues that the conditions placed on the 1995 variance, including the three year time limit, are not permitted under the Zoning Resolution or the Revised Code. However, these matters may not be raised in this appeal. If Castle Homes had any objection to the 1995 variance, it should have appealed to the trial court within thirty days, as required by R.C. 2505.07. Because no appeal was taken, Castle Homes is barred from raising issues relating to the 1995 variance. See Cleveland v. Sun Oil Co. (1989), 62 Ohio App.3d 732, 736.
 The 1998 Variance Request
Castle Homes has appealed from the denial of the 1998 variance request. Castle Homes argues that the trial court erred by affirming the Zoning Board. We disagree.
R.C. 519.14 (B) provides:
 The township board of zoning appeals may * * * [a]uthorize, upon appeal, in specific cases, such variance from the terms of the zoning resolution as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done[.]
 Section 402(3)(c) of the Zoning Resolution specifically empowers the Zoning Board to
 [a]uthorize upon appeal — whenever a property owner can show that a strict application of the terms of the Resolution relating to the use, construction or alterations of buildings or structures or the use of land will impose upon him unusual and practical difficulties or particular hardship — such variations of the strict application of the terms of this Resolution as are in harmony with its general purpose and intent; but only when the [Zoning] Board is satisfied that a granting of such variation will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficult [sic] so great as to warrant a variation from the zoning plan as established by this Resolution, and at the same time, the surrounding property will be properly protected.
 Section 402(5) gives additional issues that the Zoning Board must consider before granting any variance.
A variance is for the purpose of alleviating the burden of strict compliance with a zoning regulation placed upon a property owner, not to change zoning schemes or alter the character and use of the zoning district. Consolidated Mgmt., Inc. v. Cleveland (1983), 6 Ohio St.3d 238, 240. The denial of a variance request "is presumed to be valid, and the burden of showing the claimed invalidity rests upon the party contesting the determination." Id.
We conclude that the trial court did not abuse its discretion by affirming the decision of the Zoning Board. In the proceedings relating to the 1998 variance request, Castle Homes claimed unusual hardship was wrought by its need to continue to do business at its present location and that a forced relocation would be expensive. These arguments fail to demonstrate unusual hardship. Castle Homes made no effort during the three year time period of the 1995 variance to have the area rezoned by the Trustees. Castle Homes entered into a second three year lease for the property where it does business, but the lease was specifically made contingent on the approval of the zoning authorities of Congress Township. Furthermore, Castle Homes entered into the lease, knowing that the property was not zoned for commercial use. When property is acquired with knowledge of zoning restrictions, the party "must accept the limitations on the usage of such property, and may not demand a variance based upon the claimed hardship due to such limitations." Id. at paragraph one of the syllabus. Castle Homes did not overcome the presumption in favor of affirming the decision of the Zoning Board.
The trial court did not act with partiality, prejudice, perversity of will, or the like. Therefore, we cannot say that the trial court abused its discretion by affirming the Zoning Board's denial of the 1998 variance request.
 Constitutionality of the Zoning Resolution
Castle Homes argues that the Zoning Resolution is unconstitutional as applied. At the time of the events concerned in the case at bar, the Zoning Resolution provided for two zoning classifications: agricultural, and business/industry. However, the entire area subject to the Zoning Resolution was zoned agricultural. Castle Homes contends that this zoning scheme prohibits all commercial or industrial development and is therefore arbitrary and unreasonable. We disagree.
"A zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." Goldberg Cos., Inc. v. Richmond Hts. City Council (1998), 81 Ohio St.3d 207, syllabus. A party challenging the constitutionality of a zoning regulation must prove beyond fair debate that the regulation is unconstitutional. Id. at 209.
We conclude that Castle Homes has not demonstrated beyond fair debate that the zoning classification is unconstitutional. Under Section 100 of the Zoning Resolution, the agricultural district is characterized by "areas of productive soils which are normally removed from urban development." A valid purpose for zoning restrictions is to preserve the character of a neighborhood. See, generally, Euclid v. Ambler Realty Co. (1926),272 U.S. 365, 394, 71 L.Ed. 303, 313. Thus, a valid purpose for the Zoning Resolution is to preserve the agricultural character of the township and limit the expansion of commerce and industry onto agriculturally productive soils.[2] Thus, the Zoning Resolution is not clearly arbitrary and is substantially related to legitimate governmental ends. Castle Homes has failed to carry its heavy burden to demonstrate unconstitutionality.
 Open Meetings Law
Castle Homes contends that the Zoning Board violated R.C.121.22, Ohio's open meetings law, when the Zoning Board considered the 1998 variance request. Castle Homes contends that, in considering the 1995 variance request, the Zoning Board met in executive session and decided what conditions to place on the 1995 variance. Castle Homes also argues that, because two members of the Zoning Board testified in depositions that such was their regular practice in considering variances, it should be presumed that a similar violation took place when considering the 1998 variance request. These contentions are not well taken.
The objective of R.C. 121.22 is to require meetings of public bodies, and any official action of those bodies, to take place in a public meeting. See R.C. 121.22(A). Any action taken by a public body that violates R.C. 121.22 may be invalidated. R.C. 121.22(H). However, an exception exists for quasi-judicial proceedings. In TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision (1998), 81 Ohio St.3d 58, the appellants argued that the Board of Tax Appeals was subject to R.C. 121.22. The Ohio Supreme Court held that the Board of Tax Appeals was not subject to the open meetings law because it was acting in a quasi-judicial capacity. Id. at 62. The court stated that the characteristics of a quasi-judicial proceedings were: (1) notice of hearing and an opportunity to introduce testimony of witnesses, (2) the decision may be appealed to the courts, and (3) the public body's decision involves the exercise of discretion. Id. See, also, Angerman v. Ohio State Med. Bd. (1990), 70 Ohio App.3d 346,352; In re Petition for Annexation of 162.631 Acres (1988), 52 Ohio App.3d 8, 12.
Turning to the case at bar, we conclude that the Zoning Board was acting in a quasi-judicial capacity when it acted upon the 1998 variance request. First, due process required that Castle Homes be given notice and an opportunity to be heard, and a hearing was held on the matter. Second, pursuant to R.C. 2506.01, the decision of the Zoning Board may be appealed to the common pleas court. Third, the decisions of the Zoning Board involve a degree of discretion, as demonstrated by the standard of review employed by the common pleas court in reviewing the decisions of the Zoning Board under R.C. 2506.04. Because the Zoning Board was acting in a quasi-judicial capacity, R.C. 121.22 did not apply to its deliberations regarding the 1998 variance request.
Section 1983 Claim
In its complaint, Castle Homes set forth a claim for damages for violation of civil and constitutional rights. While no specific theory of recovery is fully discussed, there are clear references to violation of constitutional rights and actions under color of law. Therefore, we construe the claim as one for damages under Section 1983, Title 42, U.S. Code. Furthermore, on appeal, Castle Homes only contends that the members of the Zoning Board should be held liable under this cause of action.
Section 1983 states in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
Some defendants to a Section 1983 action are entitled to assert an immunity to suit. One such immunity is an absolute immunity for judges. Butz v. Economou (1978), 438 U.S. 478, 512,57 L.Ed.2d 895, 919. This absolute immunity has been extended to persons acting in a capacity that shares certain "characteristics of the judicial process." Id. at 513, 57 L.Ed.2d at 920. See, also, Watts v. Burkhart (C.A.6, 1992), 978 F.2d 269, 273. If these characteristics of the judicial process[3] are present, the adjudicators are entitled to quasi-judicial immunity.
In the case at bar, the trial court granted summary judgment on this claim based on quasi-judicial immunity for the members of the Zoning Board. We agree. When acting upon the 1995 variance and the 1998 variance request, the Zoning Board acted in a quasi-judicial capacity, as discussed above regarding Castle Homes' open meetings law claim. We also note that the process before a zoning appeals board shares one other notable characteristic of the judicial process: matters before a zoning appeals board are "sufficiently intense" to prompt a losing party to seek another forum, "charging the participants in the first [forum] with unconstitutional animus." Butz, 438 U.S. at 512,57 L.Ed.2d at 919.
We conclude that the members of the Zoning Board are entitled to quasi-judicial immunity from Castle Homes' claims under Section 1983. Therefore, the trial court did not err by granting summary judgment in favor of appellees on this issue.
 Summary
The trial court did not abuse its discretion by affirming the Zoning Board's decision. In addition, the trial court did not err by granting summary judgment in favor of appellees on all claims in Castle Homes' complaint for declaratory judgment, injunctive relief, and damages under Section 1983. Finding no error, we overrule Castle Homes' first and second assignments of error.
 III.
Castle Homes' assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
 FOR THE COURT
BAIRD, P.J.
WHITMORE, J.
CONCUR
[1] The appellees are: Harold Tegtmeier, Dale Forbes, and Dave Knight, the members of the Congress Township Board of Trustees (collectively, "the Trustees"); Jay Catteau, Dave Rathbone, Barbara Calihan, Patricia Grube, and Miles Crumley, the members of the Congress Township Board of Zoning Appeals (collectively, "the Zoning Board"); and Don Castella, the Congress Township Zoning Inspector ("the Zoning Inspector").
[2] We also note that nothing forbids the township from creating business/industry zones, after conforming to the procedures outlined in the Revised Code and the Congress Township Zoning Resolution.
[3] Some of these characteristics are: the adjudicator does not serve at the pleasure of an appointing authority, thereby insulating the adjudicator from the political process; the adjudicatory process is adversarial in nature; and procedural safeguards in the adjudicatory process exist, including the possibility of appeal to correct error. See Butz,438 U.S. at 512, 57 L.Ed.2d at 920; Watts, 978 F.2d at 273-74.